**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Eloise K. Hahn, P.E., R.E.M.                    Assigned Judge: Judge Coar

V.                                              CIVIL ACTION
                                                No. 08CV2333

US EPA Region 5
Peter Swenson, Chief NPDES Programs Branch, USEPA
Alan Nudelman, Water Division, US EPA Region 5
Merry Jackson, USEPA Region 5
Tinka Hyde, USEPA Acting Director, Water Division

RECEIVED
MAY 1 4 2008
MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

## AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1.  This is an action of employment discrimination.

2.  The plantiff is Eloise K. Hahn, P.E., R.E.M. of the county of Cook in
    the State of Illinois.

3.  The defendants, the USEPA, Region 5, Peter Swenson, Director of
    NPDES Programs Branch, Water Division, is employed at 77 West
    Jackson, Chicagfo, IL  60604, along with his fellow friends being,
    Alan Nudelman, Merry Jackson and Tinka Hyde, Water Division
    Acting Chief, who are employed at The USEPA Office, located
    at 77 West Jackson, Chicago, 60604-3590, in the county of Cook,
    State of Illinois,  60604.  Mr. Swenson's direct phone number is
    (312) 886-0236.

-2-

4.    The Plantiff sought employment or has been employed by the Defendants since June 1989.  The Plantiff transferred her civil service employment from the Department of the Army Rock Island Arsenal and Chemical Munnitions Command in 1990 when she was hired by the USEPA Region 5 Division of Compliance and Enforcement, Water Division on or about May 1990.  Hence. Plantiff has approximately 19 years of service with the United States government as an Engineer, Civil Service.

5.    The Plantiff was hired by the USEPA in May 1990 and is still employed by the Defendants.

6.    The Defendants discriminated against the Plantiff on or about July 2, 2002.  The discrimination focused on sex discrimination, marital status, harassment, national origin, race, religion, disability, color and age.  Further, the Plantiff was not given equal pay nor equal rights to her entitled benefits for leave and flexi-place.  Finally, the Plantiff has continually been denied her civil rights to use the restroom without putting in for annual leave, call her family or travel for the USEPA.

-3-

7.      The Plantiff has filed a charge or charges against the

        Defendants  asserting the acts of discrimination indicated in this

        Complaint with the United States Regional Civil Rights Office

        on March 10 and April 25, 2008.

8.      A copy of the EEOC Counselor's Initial Interview Charges

        were filed with the Honorable Judge Coar's Deputy Clerk

        on May 13, 2008.  Additional investigation is advised for

        thirty (30) additional days to see if a settlement can be

        achieved such as the Plantiff being transferred to the US Naval

        Base in Chicago or Hawaii or Plantiff be granted Disability

        Retirement Benefits.

9.      The United States Environmental Protection Office, Region 5,

        has advised the Plantiff that if settlement cannot be achieved

        during the informal investigation process she will be issued

        a Right to Sue Notice.

10.     The Defendants have discrimated against the Plantiff because

        of Plantiff's:

        (a) Age (Age Discrimination Act)

        (b) Color (Title VII of the Civil Rights Act of 1964 and 42

-4-

U.S.C. Section 1981.

(c)    Disability (Americans with Disabilities Act).

(d)    National Origin (Title VII of the Civil Rights Act
       Of 1964 and 42 U.S.C. Section 1981.

(e)    Race (Title VII of the Civil Rights Act of 1964 and
       42 U.S.C Section 1981.

(f)    Marital Status

(g)    Religion (Title VII of the Civil Right Act of 1964)

(h)    Sex (Title VII of the Civil Rights Act of 1964)

(i)    Non-equal pay

(j)    Non-equal benefits

(k)    Sexual harassment

11.    The Plantiff is suing the Defendants, including the Federal

       government for discrimination on the basis of national origin,

       race, color, age, marital status, sex, religion, sexual harassment,

       non-equal pay and benefits, deformation of character and

       disabilities.

12.    Jurisdiction over the statutory violations alleged is conferred as

       follows:  over Title VII claims by 28 U.S.C. Section 1331, 28

-5-

U.S.C. Section 1343(a)(3), and 42 U.S.C. Section 2000e-

5(f)(3); over 42 U.S.C. Section 1981 and Section 1983 by 42

U.S.C. Section 1988; over the A.D.E.A. by 42 U.S.C.

Section 12117.

13.   a)   The Defendants plan to terminate the Plantiff on

June 2, 2008, without Plaintiff having a jury trial.

b)   The Defendants failed to promote Plaintiff.

c)   The Defendants failed to reasonably accommodate the

Plantiff's religion.

d)   The Defendants failed to reasonably accommodate the

Plantiff's disabilities.

e)   The Defendant's failed to grant Plaintiff flexi-place

privileges.

f)   The Defendant's failed to provide Plaintiff equal pay and

benefits.

14.   The facts supporting the Plaintiff's claim for discrimination

are as follows:

## COMPLAINT FOR DAMAGES

Count 1

-6-

1.    Plantiff is not an alcoholic but is diagnosed with

hypothyroidism and sleeping disorder .

Plantiff's psychiatrist, Dr. Sheldon Greenberg, will verify

this once I obtain an attorney.

2.    It is Plantiff's belief that the Defendants knowingly,

intentionally, discriminated and harassed Plantiff

to defame Plantiff's character and may be liable for

a personal injury suit due to mental cruelty to unjustly

propose to terminate Plantiff without evidence of

being intoxicated.

WHEREFORE Plantiff respectfully prays the court for judgment

against the Defendants in the amount of $1,000,000 for terminating

Plantiff's employment prematurely of about ten years, including

$1,200,000 for lost retirement benefits Plantiff would have received if

Plantiff was not unjustly terminated.

### Count II

COMES NOW Plantiff, pro se, and for her cause of action alleges and

says:

1.    That the contents of Count 1, paragraphs 1-2 are incorporated

-7-

herein and made a part hereof.

2.   That the Defendants, Peter Swenson and Alan Minor have
     intimidated, harassed, defamed and falsely accussed malicious
     allegations against the Plantiff in order to demean the Plantiff's
     reputation to such an extent that she is now required to take valium
     and seroquel (sleeping pills) to get her sleep nightly.

3.   That the Defendants, Peter Swenson and Alan Nudelman contacted
     Homeland Security on May 22, 2007, when the Plantiff was suffering
     from broken ribs requiring pain killers.  Additionally, when Homeland
     Security arrested the Plantiff, she was taken to an underground prison
     in the IRS building for approximately six hours.  Plantiff requests
     this honorable court to obtain the video tape of the incidence for trial.
     Plantiff suffered even more by being incarcerated since she was
     chained to a bench whereby her ribs were exposewd to more damage.
     Finally, Plantiff screamed for her life, particularly she was having
     a hard time to breathe.  Only after Plantiff screamed for medical
     attention did Homeland Security consider her imminent medical
     attention and take Plantiff to the Northwestern Hospital's Emergency
     Room.

-8-

4.     Plantiff recalls Homeland Security gossiping about Plantiff

       citing, "Do you think we should have locked her up after all

       she is an Environmental Engineer".

5.     At approximately 8:00 p.m. on May 22, 2007, Plantiff was

       thrown into a police van attributing to her eyeglasses getting

       demolished, i.e., to replace the glasses attributed to a $700

       expenditure.

6.     When Plantiff arrived at the emergency room she was

       restrained with handcuffs to the hospital bed due to

       trauma.  Additionally, without the Plantiff's consent she was

       injected with a lethal drug without Plantiff's permission.

       Plantiff immediately contacted her daughter and nephew and

       instructed them to come to the emergency room immediately.

       Plantiff's daughter and nephew were instructed by the hospital

       to return to the hospital sometime after midnight contingent

       on obtaining an xray of Plantiff's chest.  The findings were that

       Plantiff may have been suffering from an abnormal infiltrate,

       however, Oak Park Hospital's findings were that Plantiff was

       suffering from broken ribs, as documented by Plantiff's family

-9-

physician, Dr. Guo.  The Plantiff arrived to her residence

approximately at 2:00 a.m. on May 23, 2007.

11.    That Plantiff's daughter advised the Northwestern Hospital

that Plantiff was not acting any differently than she had for

the past 16 years.

12.    That Plantiff's nephew was enraged with the false arrest,

mental anguish and cruelty, and physical suffering Plantiff

had experienced through this traumatic event.

13.    That Homeland Security required Plantiff to pay $500 for the

arrest.

WHEREFORE, the Plantiff prays to this honorable court

for a supeona to obtain a copy of the video tape incidence, as

well as, expunge this incidence from Plantiff's employment

file and compensate her for the $1,200 plus medical expenditures she

endured for this false arrest.


## Count III

COMES NOW Plantiff, pro se, and for her cause of action alleges

and says:

1.    That the contents of Count I, paragraphs 1-2, are incorporated

-10-

herein and the contents of Count II, paragraphs 1-13 are incorporated
herein.

2.   That on March 6, 2008, Plantiff took her lunch from 11:35 a.m.
to 12:05 p.m. After lunch Plantiff proceeded to the restroom
to brush her teeth, powder her nose and use the toilet. When
she returned to her desk at 12:35 p.m. Plantiff was falsely
accused of an unexcused absence whereby Mr. Swenson
demanded a leave slip from Plantiff for using the restroom.
Additionally, Mr. Swenson falsely accused Plantiff of making a
telephone call for travel arrangements. Plantiff denies this
allegation and affirmatively states Plantiff could not make any
travel arrangements without money. Further at approximately
3:00 p.m. that afternoon Plantiff took her 15 minute break to go
to her car and get some vital paperwork that Plantiff needed
to continue her work that day. When Plantiff was at the garage
Mr. Swenson and Mr. Nudelman followed her and alleged
Plantiff was absent without leave. Finally, Mr. Swenson
grabbed Plantiff's car keys and threw her body into his car
as if she was being kidnapped. Plantiff believes Mr. Nudelman

-11-

stole Plantiff's car keys and kept moving her vechicle

throughout the garage so Plantiff could not escape

from Mr. Swenson's vechicle.  Mr. Swenson insisted

to drive Plantiff to her son's house in Indiana since Plantiff

advised Mr. Swenson that she had promised her son that

she would get the furnance fixed on May 7, 2008.

13.    Plantiff requested both Mr. Nudelman and Mr. Swenson if she

could obtain her blood sugar testing kit.  They refused

attributing to Plantiff's confusion as she believes she was

suffering from low blood sugar.

14.    On March 7, 2008, Plantiff had to incur a $15.00 taxi charge

to get to the South Shore train and go back to Chicago to

get her keys from Mr. Nudelman.

WHEREFORE, Plantiff respectfully requests statutory damages

against the Defendants, Alan Nudelman and Peter Swenson for sexual

harassment and deformation of character includiung treble damages

and costs in that the Defendants, Alan Nudelman and Peter Swenson,

are attempting to terminate the Plantiff unjustly for Plantiff taking a

break and wanting to test her blood sugar and for all other just and

-12-

proper relief in the premises.

## Count IV

1.  That the contents of Count I, paragraphs 1-2 are incorporated herein
    and the Contents of Count II, paragraphs 1-13, including the Contents
    of Count III, paragraphs 1-14 are incorporated herein.

2.  That Plantiff has been accused by Mr. Swenson of misuse of her
    travel card from Morgan Chase.

3.  That the Plaintiff denies misuse of the travel card as all balances are
    paid in full and were timely. Further, Plaintiff was advised by the
    Morgan Chase personnel that the previous administrator, Mary Gade,
    had approved Plantiff to use the travel card for any and all food
    expenditures, including gas to do her job both on or off travel. In
    addition the bank had advised Plaintiff she was allowed to use the card
    to buy her medications in an emergency.

4.  Plantiff 's last previous trips was one trip to MN in 2002 and two trips
    to Minnesota and Michigan in 2007. While Plantiff was engaged
    in full time employment in the Compliance and Enforcement Section
    of the Water Division Plaintiff traveled frequently and never was
    prosecuted for any misuse.

-13-

5.    Plantiff affirmatively states that she was instructed to use the

travel card for expenditures attributed for Plantiff to accomplish her

mission for the USEPA Region 5.  Plantiff apologizes if the

USEPA believes she knowingly used the Travel card illegally since

The bank had advised her differently.

WHEREFORE  Plantiff respectfully prays to the court for a supeona

to Morgan Chase telephonic tapes with respect to conversations with Plantiff

and bank personnel, a supeona to obtain the video tape of Plantiff's

incarceration in the IRS jail May 22, 2007 and $2,200,000 for costs and

damages to Plantiff and for all other just and proper relief in the premise

including a disability retirement pension if the termination occurs instead of

a transfer to the Naval base in Hawaii or Chicago or a transfer to the Internal

Revenue Service.  Additionally, Plantiff prays to this honorable court

for the following:

a) To direct the Defendants to withdraw all allegations alleged

currently to terminate her, including expunging all

adverse documentation in her personnel file;

b)  That the defendants provide Plantiff annual & sick leave,

including equal pay;

-14-

c) That the Defendants grant the Plaintiff flexi-place;

d) That the Defendants provide reasonable accomodation to Plantiff's disabilities;

e) That the Defendants promote her immediately;

f) That the Defendants quit harassing the Plaintiff;

g) That the Plantiff be granted appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

I   h) Grant such other relief as the Court and jury find appropriate, including full retirement benefits.

*Eloise K. Hahn, R.E.M., P.E.*
Eloise Kathleen Hahn
1631 S. Clarence Av., Apt. 1
Berwyn, IL   60402
(708) 484-2169